1  MICHAEL J. HADDAD (SBN 189114)
2  JULIA SHERWIN (SBN 189268)
   TERESA ALLEN (SBN 264865)
3  HADDAD & SHERWIN LLP
   505 Seventeenth Street
4  Oakland, CA 94612
   Telephone:    (510) 452-5500
5  Facsimile:    (510) 452-5510

6  Attorneys for Plaintiff

7                    **UNITED STATES DISTRICT COURT**

8                    **EASTERN DISTRICT OF CALIFORNIA**

9

10 SALVADOR SILVA, DECEASED, by and through )
   his Successor in Interest, SONJA ALVAREZ, )
11 SONJA ALVAREZ, Individually, )
                                              )
12               Plaintiff, )              **Case No.**
          vs.                              )
13                                         )  **COMPLAINT FOR DAMAGES,**
   SAN JOAQUIN COUNTY, a public entity; SAN )  **DECLARATORY &**
14 JOAQUIN COUNTY SHERIFF-CORONER )          **INJUNCTIVE RELIEF, AND**
   PATRICK WITHROW, in his individual and official )  **DEMAND FOR JURY TRIAL**
15 capacities; ROBERT HART, M.D.; FOZIA NAR, )
   L.V.N.; MARY CEDANA, R.N.; SARAI )
16 HARDWICK, L.V.N.; CYNTHIA BORGES- )
   ODELL, MFT; NICHOLE WARREN, P.T.; )
17 MANUEL RODRIGUEZ-GALAVIZ, MFT; )
   MARICEL MAGAOAY, L.V.N.; MANDEEP )
18 KAUR, R.N.; CHERYL EVANS, A.S.W.; )
   CHRISTEL BACKERT, FNP; ROBYN MENDOZA, )
19 NP,  and DOES 1–20; individually, jointly, and )
   severally, )
20                                         )
                                           )
21               Defendants. )
                                           )
22 ─────────────────────────────────

23

24

25

26

27

28

Plaintiff, by and through her attorneys, HADDAD & SHERWIN LLP, for her Complaint against Defendants, states as follows:

### JURISDICTION

1.      This is a civil rights wrongful death/survival action arising from Defendants' deliberate indifference to the serious medical and mental health needs of pretrial detainee, SALVADOR SILVA, resulting in his suicide on August 1, 2019, at the San Joaquin County jail. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of California.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367, to hear and decide claims arising under state law.

### INTRADISTRICT ASSIGNMENT

2.      A substantial part of the events and/or omissions complained of herein occurred in the City of French Camp, San Joaquin County, California, and, pursuant to Eastern District of California Civil Local Rule 120(d), this action is properly assigned to the Sacramento Division of the United States District Court for the Eastern District of California.

### PARTIES AND PROCEDURE

3.      Plaintiff SONJA ALVAREZ is the mother of Decedent SALVADOR SILVA and a resident of the State of California.  Plaintiff SONJA ALVAREZ brings these claims individually and as Successor in Interest for her son, Decedent SALVADOR SILVA, pursuant to California Code of Civil Procedure §§ 377.10 *et seq.* and federal civil rights laws.  Decedent SALVADOR SILVA had no spouse or children.  A successor in interest declaration is filed herewith.

4.      Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions.  Plaintiff also brings her claims individually and on behalf of Decedent SALVADOR SILVA on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law, and California law.  Plaintiff also brings these claims as a Private Attorney General, to vindicate not only her rights and SALVADOR SILVA's rights, but others' civil rights of great importance.

5.      Defendant COUNTY OF SAN JOAQUIN ("COUNTY") is a public entity, duly organized and existing under the laws of the State of California.  Under its authority, the COUNTY operates the San Joaquin County Sheriff's Office (SJCSO) and the San Joaquin County jail.

6.      Defendant SHERIFF-CORONER PATRICK WITHROW ("WITHROW"), at all times mentioned herein, was employed by Defendant COUNTY as Sheriff-Coroner for the COUNTY, and he was acting within the course and scope of that employment.  In that capacity, Defendant WITHROW was a policy making official for the COUNTY OF SAN JOAQUIN. Further, Defendant WITHROW was ultimately responsible for the provision of medical and mental health care to inmates at the COUNTY jail, including assessment of inmates for medical emergencies and possible mental health needs, and all COUNTY policies, procedures, and training related thereto.  He is being sued in his individual capacity.

7.      Defendant ROBERT HART, M.D., at all times mentioned herein, was employed by Defendant COUNTY's Behavioral Healthcare Services ("BHS") and was responsible for the provision of psychiatric and mental health services to patients incarcerated in San Joaquin County's jail, including MR. SILVA, and was acting within the course and scope of that employment.  As set forth below, Defendant HART knew of MR. SILVA's serious psychiatric needs, yet failed to go to the jail to assess him, never utilized telepsychiatry services at the jail to remotely assess and treat MR. SILVA, prescribed psychiatric and other medications for MR. SILVA without ever seeing him, failed to request or institute any increased observation of him, permitted unlicensed people to perform mental health assessments on MR. SILVA, failed to create a treatment plan for Mr. SILVA, and failed to supervise the mental health care provided to MR. SILVA, all with deliberate indifference to MR. SILVA's serious mental health needs.

8.      Defendant FOZIA NAR, L.V.N., was at all material times employed by Defendant COUNTY's jail Correctional Health Care services ("CHC"), and acted within the course and scope of that employment.  As set forth below, Defendant NAR worked outside her legal scope of practice as a Licensed Vocational Nurse ("L.V.N.") when she performed the intake medical and mental health assessment on Decedent SALVADOR SILVA when he was booked in the jail and failed to request a properly licensed, psychiatric assessment for SALVADOR SILVA, and failed to inform a

physician, mid-level provider, or Registered Nurse, of his need for psychiatric care, all with deliberate indifference to Mr. SILVA's serious mental health needs.

9.     Defendant MARY CEDANA, R.N., was at all material times employed by Defendant COUNTY's jail Correctional Health Care services, and acted within the course and scope of that employment.  As set forth below, Defendant CEDANA permitted LVNs to work outside of the scope of their legal practice and without adequate supervision, failed to properly assess and treat MR. SILVA, failed to create a treatment plan for him, and failed to inform any physician, mid-level provider, or mental health nurse about his serious mental health needs, all with deliberate indifference to Mr. SILVA's serious psychiatric needs.

10.     Defendant SARAI HARDWICK, L.V.N., was at all material times employed by Defendant COUNTY's jail Correctional Health Care services, and acted within the course and scope of that employment.  As set forth below, Defendant HARDWICK worked outside her legal scope of practice as a Licensed Vocational Nurse when she performed the mental health suicide risk assessment on MR. SILVA when he was booked in the jail and failed to request a properly licensed psychiatric nurse to conduct the assessment, and failed to inform any physician, mid-level provider, or Registered Nurse about his severe mental health needs, all with deliberate indifference to Mr. SILVA's serious psychiatric needs.

11.     Defendant CYNTHIA BORGES-ODELL, MFT, was at all material times employed by Defendant COUNTY's Correctional Health Care services, as a Marriage and Family Therapist, and acted within the course and scope of that employment.  As set forth below, Defendant BORGES-ODELL never evaluated MR. SILVA herself, never created a treatment plan for him, never requested or instituted necessary suicide precautions for Mr. SILVA, including increased monitoring and observations, signed off on mental health care L.V.N.'s performed outside their legal scope of practice – sometimes many days after L.V.N.'s chart note, failed to supervise psychiatric technicians and L.V.N.'s,, and failed to notify a mental health nurse, physician or mid-level provider of his serious mental health needs, all with deliberate indifference to Mr. SILVA's serious psychiatric needs.

12.     Defendant NICHOLE WARREN, P.T., was at all material times employed by Defendant COUNTY's jail Correctional Health Care services, as a Psychiatric Technician, and

acted within the course and scope of that employment.  As set forth below, Defendant WARREN failed to treat and properly assess MR. SILVA, worked outside her legal scope of practice, never requested the creation of a treatment plan for him, failed to request or institute necessary suicide precautions for MR. SILVA, including increased monitoring and observations, and failed to notify a mental health nurse, physician or mid-level provider of his serious mental health needs, all with deliberate indifference to Mr. SILVA's serious psychiatric needs.

13.     Defendant MANUEL RODRIGUEZ-GALAVIZ, L.V.N., was at all material times employed by Defendant COUNTY's jail Correctional Health Care services, and acted within the course and scope of that employment.  As set forth below, Defendant RODRIGUEZ-GALAVIZ worked outside his legal scope of practice as an L.V.N. when he performed mental health assessments on MR. SILVA throughout his incarceration and failed to request a properly licensed, psychiatric assessment for MR. SILVA, and failed to inform a physician, mid-level provider, or Registered Nurse of his need for psychiatric care, all with deliberate indifference to Mr. SILVA's serious mental health needs.

14.     Defendant MARICEL MAGAOAY, L.V.N., was at all material times employed by Defendant COUNTY's jail Correctional Health Care services, and acted within the course and scope of that employment.  As set forth below, Defendant MAGAOAY worked outside her legal scope of practice as an L.V.N. when she performed mental health assessments on MR. SILVA throughout his incarceration and failed to request a properly licensed, psychiatric assessment for MR. SILVA, and failed to inform a physician, mid-level provider, or Registered Nurse of his need for psychiatric care, all with deliberate indifference to Mr. SILVA's serious mental health needs.

15.     Defendant MANDEEP KAUR, R.N., was at all material times employed by Defendant COUNTY's jail Correctional Healthcare services, and acted within the course and scope of that employment.  As set forth below, Defendant KAUR permitted LVNs to work outside of their legal scope of practice and without adequate supervision, failed to properly assess and treat MR. SILVA, failed to create a treatment plan for him, failed to inform any physician, mid-level provider, or psychiatrist about his serious mental health needs, all with deliberate indifference to Mr. SILVA's serious psychiatric needs.

16.     Defendant CHERYL EVANS, A.S.W., was at all material times employed by Defendant COUNTY's jail Correctional Health Care services, as an Associate Social Worker, and acted within the course and scope of that employment.  As set forth below, Defendant EVANS worked outside her legal scope of practice by conducting unsupervised mental health assessments on MR. SILVA, never requested the creation of a treatment plan for MR. SILVA, never requested appropriate suicide precautions for MR. SILVA, including enhanced monitoring, and never requested that he been seen by a physician or mental health nurse for his severe mental illnesses, all with deliberate indifference to his serious mental health needs.

17.     Defendant CHRISTEL BACKERT, FNP, was at all material times employed by Defendant COUNTY's jail Correctional Health Care services as a Family Nurse Practitioner, and acted within the course and scope of that employment.  As set forth below, Defendant BACKERT failed to take appropriate steps to ensure that MR. SILVA was receiving the appropriate continuity of care when he was removed from the medical housing unit to a segregated cell in the sheltered housing unit, failed to create or request a treatment plan for him, failed to request appropriate suicide precautions, including heightened monitoring of MR. SILVA, and failed to inform a physician or mental health nurse of his serious psychiatric needs, all with deliberate indifference to MR. SILVA's serious mental health needs.

18.     Defendant ROBYN MENDOZA, NP, was at all material times employed by Defendant COUNTY's jail Correctional Health Care services, as a Nurse Practitioner, and acted within the course and scope of that employment.  As set forth below, Defendant MENDOZA failed to request a psychiatric evaluation of MR. SILVA, failed to create a treatment plan for him, and failed to request increased suicide precautions, including  heightened monitoring or placement in a safety cell, all with deliberate indifference to his serious medical needs.

19.     All COUNTY medical and mental health staff were responsible for properly assessing and classifying inmates, properly assessing and addressing the medical needs of inmates, properly assessing and addressing the mental health needs of inmates, properly assessing and treating the serious medical needs of inmates, providing appropriate observation and a treatment

plan for serious medical needs, including suicide prevention, care and treatment for mental illness and emotional disturbance, monitoring inmates, and summoning medical care when it was needed.

20.     Defendants DOES 1-20 ("DOE Defendants"), at all times mentioned herein, were employed by Defendant SAN JOAQUIN COUNTY as correctional deputies, sergeants, supervisors, health care personnel, mental health care personnel, or other policy making officials at the jail, and were acting within the course and scope of that employment.  DOE Defendants are being sued in their individual capacities.

21.     Plaintiff is ignorant of the true names and capacities of Defendants DOES 1-20 (DOE Defendants") and therefore sues these Defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiff as set forth herein.  Plaintiff will amend her complaint to state the names and capacities of each DOE DEFENDANT when they have been ascertained.

22.     Plaintiff is informed and believes and thereon alleges that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship.  Plaintiff is further informed and believes and thereon alleges that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged.  At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiff's and Decedent's constitutional rights and other harm.

23.     The acts and omissions of the Defendants as set forth herein, were at all material times pursuant to the actual customs, policies, practices and procedures of the COUNTY.

24.     At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California and San Joaquin County.

25.     Plaintiff timely and properly filed a tort claim with San Joaquin County pursuant to California Government Code sections 910 et seq., and this action is timely filed within all applicable statutes of limitation.

26. This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

**GENERAL ALLEGATIONS**

27. Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

28. SALVADOR SILVA was a 23-year-old man who had a significant history of severe mental illnesses, including psychosis, auditory and visual hallucinations, schizophrenia or schizoaffective disorder, bipolar disorder, severe depression, and multiple suicide attempts going back to his childhood. With appropriate medication, MR. SILVA enjoyed life's activities, including singing and writing poetry and had strong relationships with his mother, siblings, and other family members.

29. On or about June 27, 2019, MR. SILVA was arrested for violation of a stay away order in Stockton, California and booked into San Joaquin County jail. The incident that gave rise to MR. SILVA's arrest indicated MR. SILVA was suffering from a serious mental illness. At all times throughout his incarceration, MR. SILVA obviously was severely mentally ill and at very high risk of suicide, with a long history of past suicide attempts and suicidal ideation.

30. During the booking process on June 27, 2019, at about 12:33 p.m. COUNTY correctional officer THANH NGUYEN completed a medical screening questionnaire and noted that MR. SILVA was under the care of a psychiatrist at Defendant COUNTY's Behavioral Healthcare Services ("BHS"), the COUNTY's mental health services provider. At all relevant times, SAN JOAQUIN COUNTY, through its Behavioral Healthcare Services, was responsible for providing mental health care to pretrial detainees at San Joaquin County Jail, including to MR. SILVA.

31. Mr. SILVA had an extensive mental health history with BHS, which documented his severe mental illnesses and past suicide attempts dating back to his childhood. In the month leading up to his arrest, MR. SILVA had been placed on several, separate Welfare and Institutions Code §5150 psychiatric holds with BHS for being a danger to himself by exhibiting bizarre behavior and making suicide attempts. BHS discharged MR. SILVA from his final "5150" psychiatric hold on June 25, 2019, two days before his arrest. At all times relevant, the jail's medical and mental health

staff had access to MR. SILVA's mental health records from BHS through the COUNTY's Gateway medical records system.

32.     At about 1:08 p.m. on June 27, 2019, Defendant FOZIA NAR, L.V.N, ("NAR") performed the jail's intake medical and mental health assessment on MR. SILVA.  Defendant NAR was not a certified psychiatric nurse and was not qualified or legally permitted to make mental health assessments.  She was also not a Registered Nurse and was not qualified or legally permitted to conduct any nursing assessments on patients.  As a Licensed Vocational Nurse, Defendant NAR's scope of practice limited her to collecting data, recording observations, and reporting those observations to a Registered Nurse or a physician to do a physical assessment of the patient.  LVN's are not permitted to work independently; they must work under the direct supervision of a Registered Nurse or physician at all times.  Defendant NAR, despite knowing the limits on the LVN scope of practice, improperly assessed MR. SILVA'S condition, medically approved him for admission to the jail, worked without the legally required supervision, and failed to request an RN, mid-level provider, or physician to assess MR. SILVA's condition, all in direct violation of the legal scope of practice for LVNs and with deliberate indifference to MR. SILVA'S serious psychiatric needs.

33.     Plaintiff is informed and believes and thereon alleges that the COUNTY Defendants allow uncredentialed Licensed Vocational Nurses (LVN's) to conduct independent and unsupervised nursing and mental health assessments outside their legal scope of practice, and perform the work of Registered Nurses (RN's), psychiatric Registered Nurses or mental health practitioners, and higher level care providers in violation of California law, in order to save money, since the COUNTY pays LVN's significantly less than it pays RN's.

34.     Defendant NAR evaluated MR. SILVA and, despite being put on notice that MR. SILVA was under the care of a psychiatrist at BHS as indicated on the booking questionnaire, Defendant NAR failed to access MR. SILVA's BHS mental health records and marked on the intake assessment form that there was no past medical history for MR. SILVA and that he had no mental health conditions nor past suicide attempts.  Had Defendant NAR reviewed MR. SILVA's

1  mental health records from BHS, she would have known MR. SILVA suffered from severe mental

2  illnesses and had made numerous suicide attempts and expressed suicidal ideations many times in

3  the past, and, as recently as two days prior, had been discharged from his last "5150" psychiatric

4  hold.

5      35.    Defendant MARY CEDANA, R.N. ("CEDANA") signed the intake medical and

6  mental health assessment form along with Defendant NAR, over two hours after Defendant NAR

7  assessed him and approved him for admission to the jail, and, on information and belief, without

8  ever evaluating MR. SILVA herself.  Defendant CEDANA also never accessed MR. SILVA's BHS

9  mental health records and never created a treatment plan for MR. SILVA nor requested mental

10  health care or a psychiatric assessment for MR. SILVA despite having actual knowledge that MR.

11  SILVA was severely mentally ill and was under psychiatric treatment, all with deliberate

12  indifference to his serious psychiatric needs.

13      36.    At or about 2:00 p.m. on June 27, 2019, Defendant SARAI HARDWICK, L.V.N.

14  ("HARDWICK") conducted a mental health evaluation on MR. SILVA.  Defendant HARDWICK

15  was not a certified psychiatric nurse, licensed social worker, marriage and family therapist, or other

16  mental health practitioner and was not qualified to conduct mental health evaluations, yet she was

17  consistently assigned and permitted to do so by COUNTY Defendants.  As a Licensed Vocational

18  Nurse, Defendant HARDWICK's scope of practice limited her to collecting data, recording

19  observations, and reporting those observations to a Registered Nurse or a physician to do a physical

20  assessment of the patient.  LVN's are not permitted to work independently; they must work under

21  the direct supervision of a Registered Nurse or physician at all times.  Defendant HARDWICK,

22  despite knowing the limits on the LVN scope of practice, improperly assessed MR. SILVA'S

23  condition, worked without the legally required supervision, and failed to request an RN, mid-level

24  provider, or physician to assess MR. SILVA'S condition, all in direct violation of the legal scope of

25  practice for LVNs and with deliberate indifference to MR. SILVA'S serious psychiatric needs.

26      37.    Defendant HARDWICK evaluated MR. SILVA and noted that MR. SILVA had a

27  psychiatric history and had been hospitalized in the past for mental health reasons and needed a

28

1   "psych" clearance.  Defendant HARDWICK also noted that MR. SILVA exhibited poor impulse

2   control, poor insight, and poor judgment, and that during the evaluation he was smiling

3   inappropriately, had a short attention span, and could not keep still.  Defendant HARDWICK

4   accessed MR. SILVA's BHS records through the Gateway medical records system and noted that

5   MR. SILVA had recently been released from BHS on a "5150" psychiatric hold and that he was

6   diagnosed with unspecified psychosis (not due to substance abuse), and was currently on

7   medication.  Defendant HARDWICK put a "psych hold" on MR. SILVA and indicated that he

8   would be housed in the sheltered housing unit with, on information and belief, a bunk bed and items

9   that could be used to harm oneself, rather than a safety cell for closer monitoring and suicide

10  precautions.  Defendant HARDWICK did not request an immediate evaluation of MR. SILVA by a

11  registered nurse, mid-level provider, or physician.

12          38.      Defendant CYNTHIA BORGES-ODELL, LMFT ("BORGES-ODELL"), the jail's

13  Marriage and Family Therapist, signed Defendant HARDWICK's mental health evaluation of MR.

14  SILVA weeks later, on July 15, 2019, even though she knew that Defendant HARDWICK was not

15  a registered nurse or certified psychiatric nurse and was not qualified to make nursing or mental

16  health assessments.  On information and belief, Defendant BORGES-ODELL never evaluated MR.

17  SILVA herself, never created a treatment plan for him, failed to place MR. SILVA on appropriate

18  suicide precautions, and failed to notify a mental health nurse, physician or mid-level provider of

19  his need for psychiatric treatment, all with deliberate indifference to MR. SILVA's serious mental

20  health needs.  On information and belief, at no time before his death did MR. SILVA ever see any

21  physician or psychiatric nurse to address his serious mental health needs.

22          39.      At or about 4:40 p.m. on June 27, 2019, without ever assessing or seeing MR.

23  SILVA, Defendant ROBERT HART, M.D. ("HART") prescribed MR. SILVA antipsychotic

24  medication and related drugs, including Risperdal, Cogentin, and Depakote (also known as Valproic

25  Acid).  On information and belief, these orders were made by telephone.  Throughout MR. SILVA's

26  incarceration, Defendant HART never came into the jail to assess MR. SILVA in person despite

27  prescribing him psychotropic medications that can have serious side effects that include suicidal

28

thoughts; never utilized telepsychiatry services  to remotely assess and treat MR. SILVA; failed to order or institute any increased observation of him; failed to create a treatment plan for Mr. SILVA; and allowed L.V.N.'s, associate social workers, and psychiatric technicians to work alone and unsupervised outside their legal scope of practice, all with deliberate indifference to MR. SILVA's serious mental health needs.

40.     On June 29, 2019, while housed in the jail's sheltered housing unit, MR. SILVA pressed the emergency intercom button in his single cell to inform the correctional officer(s) in the control room that he missed his family.  A few minutes later, MR. SILVA was observed tying bed sheets together and tightening the sheets to his top bunk.  On information and belief, COUNTY correctional officer(s) entered MR. SILVA's cell, interrupted his efforts, and handcuffed him.

41.     Psychiatric Technician, Defendant NICHOLE WARREN ("WARREN"), responded to MR. SILVA's cell for an evaluation.  Defendant WARREN observed MR. SILVA handcuffed and standing in front of his bed with his head lying on the top bunk.  MR. SILVA told Defendant WARREN, "I'm suicidal.  I don't like everything on this planet.  This world is evil."  MR. SILVA added, "I will try to kill myself and even if I get out of here I will try to commit suicide and kill myself."  When Defendant WARREN asked MR. SILVA about medication for his illness, he responded, "Medication can't cure loneliness and I'm lonely."  MR. SILVA told Defendant WARREN that he tied the bed sheets together in an attempt to hang himself.  Defendant WARREN determined Mr. SILVA to be actively suicidal at that time and sent him to a safety cell in the jail's medical housing unit, also referred to as the "psych ward."  She did not request or institute any increased observation of him, nor did she create a treatment plan for him.  Defendant WARREN was not a certified psychiatric nurse, licensed social worker, marriage and family therapist, or other licensed mental health practitioner and was not qualified to conduct mental health evaluations or to make housing determinations for a severely mentally ill and suicidal patient on her own.  Weeks later, on July 16, 2019, Defendant BORGES-ODELL signed off on the notations created by Defendant WARREN, on information and belief, without ever evaluating MR. SILVA herself or creating a treatment plan for him, with deliberate indifference to his serious mental health needs.

42.     On June 29, 2019, at about 2:17 p.m., MR. SILVA was transferred to the medical housing unit and placed in a safety cell.  At around 10:00 p.m., Defendant MANUEL RODRIGUEZ-GALAVIZ, L.V.N. ("RODRIGUEZ-GALAVIZ") conducted a mental health assessment on MR. SILVA in the safety cell and noted that MR. SILVA was pacing back and forth, and when he asked MR. SILVA the reasoning for his placement in the safety cell, MR. SILVA responded, "Because I used drugs."  When Defendant RODRIGUEZ-GALAVIZ asked about MR. SILVA's actions prior to being placed in the safety cell, Mr. SILVA stated, "Yeah I attempted to tie a sheet."  MR. SILVA also reported a history of cutting his left arm to Defendant RODRIGUEZ-GALAVIZ, to which Defendant RODRIGUEZ-GALAVIZ observed healed scars on MR. SILVA's left arm.  Without seeking guidance from a psychiatrist, physician, mid-level provider, or R.N. to institute an appropriate treatment plan, Defendant GALAVIZ simply noted that MR. SILVA will continue to be monitored.

43.     Defendant RODRIGUEZ-GALAVIZ was not a certified psychiatric nurse, licensed social worker, marriage and family therapist, or licensed mental health provider and was not qualified to make mental health assessments.  As a Licensed Vocational Nurse, Defendant GALAVIZ's scope of practice limited him to collecting data, recording observations, and reporting those observations to a Registered Nurse or a physician to do a physical assessment of the patient. LVN's are not permitted to work independently; they must work under the direct supervision of a Registered Nurse or physician at all times.  Defendant RODRIGUEZ-GALAVIZ, despite knowing the limits on the LVN scope of practice, improperly assessed MR. SILVA's condition, worked without the legally required supervision, and failed to request an RN, mid-level provider, or physician to assess MR. SILVA'S condition, all in direct violation of the legal scope of practice for LVNs and with deliberate indifference to MR. SILVA'S serious psychiatric needs.

44.     On June 30, 2019 at about 12:28 a.m., Defendant MARICEL MAGAOAY, L.V.N. ("MAGAOAY") conducted a mental health assessment on MR. SILVA in the safety cell.  When Defendant MAGAOAY asked the reasoning for his placement in the safety cell, MR. SILVA responded, "I don't know but I tried to hurt myself earlier."

45.     On June 30, 2019, at around 2:28 a.m., Defendant MAGAOAY conducted another mental health assessment on MR. SILVA.  MR. SILVA informed her that he was placed in the safety cell because, "I told them that I want to hurt myself.  I tied my sheets into the bunk."  He further told Defendant MAGAOAY that "he was just being stupid and he missed his family." Defendant MAGAOAY determined that MR. SILVA showed "improve[d] impulse control and insight" and cleared him from the safety cell into an observation cell in the sheltered housing unit. Defendant MAGAOAY was not a certified psychiatric nurse, licensed social worker, marriage and family therapist, or other licensed mental health practitioner and was not qualified to conduct mental health evaluations or to make the determination that a severely mentally ill patient should be cleared from a safety cell.

46.     As a Licensed Vocational Nurse, Defendant MAGAOAY's scope of practice limited her to collecting data, recording observations, and reporting those observations to a Registered Nurse or a physician to do a physical assessment of the patient.  LVN's are not permitted to work independently; they must work under the direct supervision of a Registered Nurse or physician at all times.  Defendant MAGAOAY, despite knowing the limits on the LVN scope of practice, improperly assessed MR. SILVA's condition, worked without the legally required supervision, and failed to request an RN, mid-level provider, or physician to assess MR. SILVA's condition and to create an appropriate treatment plan for him before clearing him from the safety cell, all in direct violation of the legal scope of practice for LVNs and with deliberate indifference to MR. SILVA's serious medical needs.

47.     On July 1, 2019, criminal charges were filed against MR. SILVA by the San Joaquin County District Attorney's Office in Case No. STK-CR-FDV-2019-0008710.

48.     On July 3, 2019, the criminal case was called and a doubt arose as to MR. SILVA's competence; therefore the **criminal proceedings against MR. SILVA were suspended** and the case was referred by the San Joaquin County Superior Court to psychiatrist Dr. Cavanaugh for a Penal Code §1368 Evaluation Report to be completed.  The matter was continued to July 30, 2019 for receipt of the Penal Code §1368 Evaluation Report.

49.      Between June 30, 2019, and July 8, 2019, COUNTY licensed vocational and registered nurses continued to assess MR. SILVA in the medical housing unit.  Various COUNTY LVN's and registered nurses reported that MR. SILVA had not displayed any behavioral issues or signs of self-injurious conduct or suicidal ideations, had been medication compliant, pleasant and cooperative, and was eating and drinking regularly.  County LVNs, including Defendants HARDWICK, RODRIGUEZ-GALAVIZ, and MAGAOAY continued to give mental health evaluations outside their limited scope of practice as LVNs during this time.

50.      On July 8, 2019, Associate Social Worker, Defendant CHERYL EVANS ("EVANS"), conducted a mental health evaluation on MR. SILVA and MR. SILVA informed her that he was diagnosed with a mood disorder at age 15 and that he was previously diagnosed with depression and bipolar disorder with psychotic features.  He also told her that he dropped out of high school in the tenth grade due to his mental illness.  MR. SILVA reported that he currently takes medication and that his current symptoms include paranoia, auditory hallucinations, and racing thoughts.  MR. SILVA further reported several suicide attempts, including an attempt by hanging as a child, two attempts by cutting his veins in his arms in the prior year or two, an attempted "suicide by cop," and an attempted hanging in his cell on June 29, 2019.  When Defendant EVANS asked about stressors that increase his suicide ideations, MR. SILVA responded, "When I'm lonely, the world is just so messed up," and added that, "When I get that depressed, I have a hard time reaching out."  MR. SILVA also stated, "I want to go to that Napa Hospital program," on information and belief, for restoration of competency after a doubt arose as to his competency during his criminal case proceedings.  Mr. SILVA also informed Defendant EVANS, which she confirmed through the COUNTY's Gateway electronic medical records service, that he had been hospitalized for being a "danger to self" or "danger to others" ("DTS/DTO") twice in the days and weeks leading up to his arrest.  Defendant EVANS also noted that MR. SILVA showed good insight into his continued mental health treatment and that his family is supportive when he is doing well.  Defendant EVANS diagnosed MR. SILVA with unspecified schizophrenic spectrum and other psychotic disorder, and cannabis use disorder.

51.     Despite learning of MR. SILVA's severe mental health history and multiple suicide attempts going back to his childhood, and diagnosing him with unspecified schizophrenic spectrum and other psychotic disorder, Defendant EVANS cleared MR. SILVA to remain in the observation cell in the medical housing unit under a modified suicide watch and requested that the psych nurses continue to monitor him.  Defendant EVANS never created a treatment plan for MR. SILVA, never requested enhanced monitoring of MR. SILVA, and never requested that he been seen by a physician or psychiatrist for his severe mental illnesses, all with deliberate indifference to his serious mental health needs.  Defendant EVANS, as an Associate Clinical Social Worker, was not legally permitted to perform unsupervised work.  Defendant BORGES-ODELL did not supervise Defendant EVANS's evaluation of MR. SILVA, and did not sign off on that evaluation until a week after the evaluation took place, on July 15, 2019.

52.     On July 9, 2019, MR. SILVA's blood was collected to conduct therapeutic drug monitoring to measure the level of medication in his blood.  On June 27, 2019, Defendant HART had prescribed Mr. SILVA psychotropic drugs Risperdal, Congentin, and Valproic Acid to be taken daily for 30 days.  The test revealed that MR. SILVA had an insufficient amount of Valproic Acid in his system compared to the dosage he was prescribed, and that he had not been taking any of his other psychotropic medications at all, despite Defendants HARDWICK, RODRIGUEZ-GALAVIZ, MAGAOAY, KAUR, WARREN and other COUNTY employees reporting regularly that he had been medication compliant.  Defendant HART was informed of the test results and, upon learning that MR. SILVA had in fact not been medication compliant, failed to follow up by going to the jail to assess MR. SILVA in person, never utilized telepsychiatry services at the jail to remotely assess and treat MR. SILVA, failed to request or institute any increased observation of him, and failed to create a treatment plan for Mr. SILVA, all with deliberate indifference to MR. SILVA's serious mental health needs.  The most Defendant HART did throughout MR. SILVA's time in the jail was occasionally review mental health notes, the vast majority of which were written by L.V.N.'s practicing outside their legal scope of practice.

53.     On July 11, 2019, Defendant HARDWICK cleared MR. SILVA from an observation cell in mental health housing to a "ward room," which was, on information and belief, a cell with decreased monitoring capabilities and contained items with which one could harm himself, with deliberate indifference to his serious mental health needs.  It was outside the legal scope of practice for Defendant HARDWICK, L.V.N., to clear MR. SILVA from mental health housing.  Defendant HARDWICK, L.V.N., was not a certified psychiatric nurse, licensed social worker, marriage and family therapist, or other licensed mental health practitioner and was not qualified to conduct mental health evaluations regarding housing placements for a severely mentally ill patient, yet she was permitted to do so by COUNTY Defendants.

54.     Between July 11, 2019 and July 19, 2019, COUNTY LVN's and nurses continued to assess MR. SILVA in the sheltered housing unit's "ward room."  Various LVN's and nurses, including Defendant LVN's and nurses listed herein repeatedly reported that MR. SILVA had not displayed any behavioral issues or signs of self-injurious conduct or suicidal ideations, had been medication compliant, pleasant and cooperative, and was eating and drinking regularly.  Defendants HARDWICK, RODRIGUEZ-GALAVIZ, and MAGAOAY, continued to conduct mental health evaluations of MR. SILVA outside their limited scope of practice as LVNs.

55.     On July 19, 2019, Defendant MANDEEP KAUR, R.N., ("KAUR") discharged MR. SILVA from the medical housing unit back to the sheltered housing unit with no request for increased observation of him and no treatment plan whatsoever.  On information and belief, inmates suffering from severe mental illnesses are not adequately monitored in the sheltered housing unit and do not receive the level of psychiatric care needed to treat their mental illness.  With full knowledge that MR. SILVA suffered from untreated psychosis, schizophrenia or schizoaffective disorder with bipolar features and/or bipolar disorder, and major depression, had recently engaged in suicidal conduct and ideations while housed in the sheltered housing unit just weeks prior, Defendant KAUR chose to discharge MR. SILVA from the medical housing unit without any measures taken for continuity of care, without ever looking at MR. SILVA's long psychiatric and suicide attempt history in the Gateway medical records system, and without any psychiatric or

mental health evaluation or treatment plan, all with deliberate indifference to his serious mental health needs.  In addition, Defendant KAUR discharged MR. SILVA to be housed alone in a segregated cell, essentially in solitary confinement.  It has been well known in correctional healthcare for decades that housing a severely mentally ill inmate alone in segregation or solitary confinement endangers the patient's mental health and greatly increases the risk of further morbidity and suicide.  It is generally accepted throughout correctional health care that inmates at risk of suicide who are housed alone in segregated cells must be under constant observation.

56.    Defendant KAUR was not a certified psychiatric nurse, licensed social worker, marriage and family therapist, or other licensed mental health practitioner and was not qualified to conduct mental health evaluations or to make the determination that a severely mentally ill patient like MR. SILVA was suitable for placement in a segregated cell in the sheltered housing unit, yet she was permitted to do so by COUNTY Defendants.  MR. SILVA remained at very high risk of suicide throughout his placement in solitary confinement, and the placement of him in a cell alone significantly increased his risk of suicide.

57.    On July 22, 2019, Defendant CHRISTEL BACKERT, FNP, ("BACKERT") evaluated MR. SILVA upon his transfer to the sheltered housing unit.  Defendant BACKERT noted that MR. SILVA had a mental health history and diagnosed him with an unspecified mental or behavioral problem.  Had Defendant HART or any a certified psychiatric nurse from the medical housing unit created a treatment plan for MR. SILVA, Defendant BACKERT would have been made aware of MR. SILVA's severe mental health illnesses and recent suicidal conduct and past suicide attempts, including the attempt by hanging in the jail a few weeks prior.  Defendant BACKERT did not but should have reviewed MR. SILVA's records from the medical housing unit or learned about MR. SILVA's mental health history from the COUNTY's Behavioral Health Services by accessing the Gateway electronic medical records service, which also would have informed Defendant of MR. SILVA's long history of serious psychiatric illness and repeated suicide attempts.  Defendant BACKERT knew of MR. SILVA's serious psychiatric needs, should have informed herself more fully of them by reviewing MR. SILVA's available medical records,

1   and failed to take appropriate steps to ensure that MR. SILVA was receiving the appropriate

2   continuity of care, failed to create a treatment plan for him or request a psychiatric evaluation of

3   him, failed to request appropriate suicide precautions, including heightened monitoring of MR.

4   SILVA, and failed to inform a physician or psychiatrist of his serious psychiatric needs, all with

5   deliberate indifference to MR. SILVA's serious mental health needs.

6          58.     On July 26, 2019, Defendant HART renewed MR. SILVA's prescription orders for

7   an additional 60 days.  Defendant HART still had not come into the jail to assess MR. SILVA in

8   person despite further prescribing him psychotropic medications that Defendant HART knew,

9   through the therapeutic drug monitoring results, that MR. SILVA was not taking, never utilized

10  telepsychiatry services to remotely assess and treat MR. SILVA, failed to request or institute any

11  increased observation of him, and failed to create a treatment plan for Mr. SILVA, all with

12  deliberate indifference to MR. SILVA's serious mental health needs.  At no time did Defendant

13  HART ever evaluate MR. SILVA; ensure another psychiatrist evaluated MR. SILVA if Defendant

14  HART was incapable of or unwilling to evaluate MR. SILVA himself; make sure MR. SILVA only

15  received care by licensed health care workers who were only working within their legal scope of

16  practice; or do anything whatsoever to provide competent health care for MR. SILVA's serious

17  medical needs.

18         59.     On August 1, 2019, at about 7:30 a.m., MR. SILVA was seen by Nurse Practitioner,

19  Defendant ROBYN MENDOZA ("MENDOZA") for intermittent pain in his side and burning in his

20  throat with indigestion, vomiting and diarrhea.  Mr. SILVA informed Ms. Mendoza that the

21  previous day he took seven ibuprofen pills for the pain.  Defendant MENDOZA treated MR.

22  SILVA for esophageal reflux and requested a stool specimen.  Although Defendant MENDOZA

23  knew or must have known about MR. SILVA's severe mental health history and past suicide

24  attempts, coupled with Mr. SILVA's admission that he took seven ibuprofen pills the previous day,

25  Defendant MENDOZA failed to request a psychiatric evaluation of MR. SILVA, failed to create a

26  treatment plan for him, failed to obtain an emergency evaluation of MR. SILVA, and failed to

27

28

request increased suicide precautions, including  heightened monitoring or placement in a safety cell, all with deliberate indifference to his serious medical needs.

60.     At about 10:50 a.m. on August 1, 2019, Defendant KAUR reported that the stool sample results were negative and that she informed MR. SILVA that she would consult with Defendant MENDOZA regarding the next steps.

61.     A short while later, at 11:13 a.m., COUNTY correctional officer Rocha found Mr. SILVA hanging by a sheet from the top bunk in his solitary confinement cell.  After life saving measures were taken, MR. SILVA was pronounced dead at 12:59 p.m.  The manner of death was suicide.

62.     Throughout the nearly two weeks MR. SILVA spent housed in solitary confinement in the sheltered housing unit from July 19, 2019, until his death on August 1, 2019, Defendant COUNTY has no record of any correctional officer conducting any checks on MR. SILVA. Defendant COUNTY produced to Plaintiff's counsel all logs concerning checks on MR. SILVA, and there are no logs, and no evidence, of any checks being conducted on him from July 19, 2019, until his death on August 1, 2019, in violation of California law and generally accepted standards requiring regular, logged, observations of all inmates.  In addition, generally accepted standards in corrections and correctional healthcare require that an inmate who is at risk of suicide and housed alone in a segregated cell or solitary confinement must be under constant observation.  Plaintiff is informed and believes and thereon alleges that All COUNTY DOE Defendant correctional officers had actual knowledge that MR. SILVA was suffering from serious psychiatric illness, had serious psychiatric needs, and all Defendants were deliberately indifferent to those serious psychiatric needs, and denied MR. SILVA necessary psychiatric care.  Defendants were deliberately indifferent to MR. SILVA's safety and psychiatric needs in their jail placement, monitoring, assessment, custody, and care decisions.  Due to such deliberate indifference, MR. SILVA's psychiatric condition deteriorated and he committed suicide.

63.     Currently unidentified deputies, jail administrators, mental health personnel, and/or law enforcement officers (DOES), knew and/or had reason to know that MR. SILVA was a

mentally ill and emotionally disturbed person, with immediate and serious medical needs, consistently at very high risk of suicide, and yet they failed to respond appropriately or lawfully and failed to provide him with adequate monitoring or request a treatment plan for him.  Defendant DOES were deliberately indifferent to MR. SILVA's immediate and serious medical needs, including mental illness[es] and emotional disturbance.  Further, Defendant DOES recklessly disregarded MR. SILVA's safety by failing to properly and adequately monitor and care for Mr. SILVA, and Defendants failed to accommodate his mental illness and disability(ies).

64.     MR. SILVA's death was the proximate result of the Defendants' deliberate indifference to his serious medical needs, as set forth above.

65.     MR. SILVA's death was also the proximate result of Defendant COUNTY's failure to reasonably train and supervise jail deputies and health care personnel tasked with screening, admitting, observing, monitoring, and protecting MR. SILVA.  These substantial failures reflect Defendant COUNTY's policies implicitly or directly ratifying and/or authorizing the deliberate indifference to serious medical needs and the failure to reasonably train, instruct, monitor, supervise, investigate, and discipline deputy sheriffs and health care personnel employed by Defendants COUNTY and SHERIFF-CORONER PATRICK WITHROW ("WITHROW") with deliberate indifference to inmates' serious medical needs.

66.     Decedent's death was also the proximate result of Defendants' failure to reasonably staff, train, supervise, and equip their medical and mental healthcare staff in the proper and reasonable screening, assessment, and care of severely mentally ill, emotionally disturbed inmates; failure to implement and enforce generally accepted, lawful policies and procedures at the jail; deliberate choices to permit and require LVN's to work outside of their legal scope of practice; and deliberate indifference to the serious psychiatric needs of inmates such as SALVADOR SILVA. These substantial failures reflect Defendant COUNTY's policies implicitly ratifying and/or authorizing the deliberate indifference to serious medical needs by their medical and mental healthcare staff and the failure to reasonably train, instruct, monitor, supervise, investigate, and discipline medical and mental healthcare staff employed by Defendants.

67.     On February 22, 2006, a federal jury held Defendants SAN JOAQUIN COUNTY and HART liable for the suicide of 19-year-old Maurice Shaw, a San Joaquin County jail inmate who suffered from schizophrenia.  *Shaw v. San Joaquin Cty.*, Case No. 2:01-CV-1668-MCE-PAN (E.D. Cal. May 18, 2006).  The jury found that "all defendants were deliberately indifferent to Mr. Shaw's rights by failing to provide him with needed medical care," "all defendants were deliberately indifferent by failing to protect Mr. Shaw," and that "deliberate indifference on the part of all the Defendants was further demonstrated by their failure to properly train, supervise and/or discipline employees at the San Joaquin County Jail at the time of Mr. Shaw's incarceration." *Id*. The jury ordered Defendant HART, who oversaw the jail's mental health care services, to pay $100,000 in punitive damages after holding him personally responsible for Mr. Shaw's death. https://www.recordnet.com/article/20060228/news01/602280330?template=ampart. Yet, Defendants COUNTY and HART failed to heed the message the *Shaw* jury sent, and continued their deliberately indifferent refusal to provide appropriate treatment to severely mentally ill patients who are at increased risk of suicide, resulting in SALVADOR SILVA's completely preventable death.

68.     At all material times, and alternatively, the actions and omissions of each Defendant were intentional, wanton, and/or willful, conscience-shocking, reckless, malicious, deliberately indifferent to Decedent's and Plaintiff's rights, done with actual malice, grossly negligent, negligent, and objectively unreasonable.

69.     As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, to the extent permitted and pled by the various legal claims set forth below, Plaintiff sustained the following injuries and damages, past and future, among others:

        a.     Wrongful death of SALVADOR SILVA, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

        b.     Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

c.     SALVADOR SILVA's hospital and medical expenses, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq.;

d.     SALVADOR SILVA's coroner's fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq.;

e.     Violation of SALVADOR SILVA's constitutional rights, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq. and federal civil rights law;

f.     SALVADOR SILVA's loss of life, pursuant to federal civil rights law;

g.     SALVADOR SILVA's conscious pain and suffering, pursuant to federal civil rights law;

h.     SONJA ALVAREZ's loss of her relationship with her son and attendant emotional distress, pursuant to federal civil rights law;

i.     All damages, penalties, and treble damages recoverable under 42 U.S.C. §§ 1983 and 1988, Cal Civil Code §§ 52 and 52.1 *et seq.* and as otherwise allowed under California and United States statutes, codes, and common law.

**FIRST CAUSE OF ACTION**
**(42 U.S.C. § 1983)**
**AGAINST DEFENDANTS HART, NAR, CEDANA, HARDWICK, BORGES-ODELL, WARREN, RODRIGUEZ-GALAVIZ, MAGAOAY, KAUR, EVANS, BACKERT, <u>MENDOZA AND DOES 1-20</u>**

70.    Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

71.    By the actions and omissions described above, Defendants HART, NAR, CEDANA, HARDWICK, BORGES-ODELL, WARREN, RODRIGUEZ-GALAVIZ, MAGAOAY, KAUR, EVANS, BACKERT, MENDOZA, AND DOES 1-20 violated 42 U.S.C. § 1983, depriving Decedent SALVADOR SILVA, through Plaintiff herein, and Plaintiff of the following clearly established and well-settled constitutional rights protected by the First, Fourth, and Fourteenth Amendments to the United States Constitution:

a.    Decedent's right to be free from deliberate indifference to SALVADOR SILVA's serious medical and mental health needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments;

b.  Decedent's and Plaintiff SONJA ALVAREZ's right to familial association as secured by the First and/or Fourteenth Amendments.

72.     Defendants subjected Decedent and Plaintiff to their wrongful conduct, depriving Decedent and Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent, Plaintiff, and others would be violated by their acts and/or omissions.

73.     As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent and Plaintiff, sustained injuries and damages as set forth above at ¶ 69.

74.     The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law.  Plaintiff does not seek punitive damages against Defendants COUNTY or SHERIFF in his official capacity.

75.     Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

**SECOND CAUSE OF ACTION**
**(*Monell* - 42 U.S.C. § 1983)**
**AGAINST THE COUNTY DEFENDANTS**

76.     Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

77.     The unconstitutional actions and/or omissions of Defendants HART, NAR, CEDANA, HARDWICK, BORGES-ODELL, WARREN, RODRIGUEZ-GALAVIZ, MAGAOAY, KAUR, EVANS, BACKERT, MENDOZA, and DOES 1-20, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants COUNTY, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant COUNTY and its Sheriff's Office:

a.     To deny pretrial detainees and other inmates access to timely, appropriate, competent, and necessary care for serious medical and psychiatric needs,

requiring such inmates in crisis to remain untreated in jail instead of providing for their serious medical needs;

b. To allow and encourage inadequate and incompetent medical and mental health care for jail inmates and arrestees;

c. To allow, encourage, and require Licensed Vocational Nurses, Psychiatric Technicians, and Associate Social Workers to work outside their legal scope of practice and without appropriate supervision, and conduct independent and unsupervised patient assessments;

d. To allow, encourage, and require unlicensed, incompetent, inadequately trained and/or inadequately supervised staff to assess inmates' medical and psychiatric condition, needs, and treatment;

e. To house seriously mentally ill patients at high risk of suicide in solitary confinement in segregated cells, thereby increasing their risk of suicide;

f. To prescribe medication, including psychotropic medication that has suicidal thoughts as a side effect, to patients without ever seeing or evaluating the patient;

g. To continue the deliberately indifferent maltreatment and mistreatment of suicidal patients and failure to supervise health care personnel even after the *Shaw* verdict;

h. To provide no treatment plan or mental health treatment for severely mentally ill inmate-patients;

i. To house mentally ill and emotionally disturbed inmates in solitary confinement in segregated housing with no legally required welfare checks;

j. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling mentally ill and/or emotionally disturbed persons or persons in crisis;

k. To cover up violations of constitutional rights by any or all of the following:

    i. By failing to properly investigate and/or evaluate incidents of violations of rights, including by unconstitutional medical and psychiatric care at the jail;

    ii. By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by jail staff; and

    iii. By allowing, tolerating, and/or encouraging jail staff to: fail to complete and accurate reports; file false reports; make false

statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

l.   To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers, sheriff's office personnel, health care personnel and staff at the jail whereby an officer or member of the sheriff's office, does not provide adverse information against a fellow officer or member of the SJCSO;

m.   To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a) through (l) above, with deliberate indifference to the rights and safety of Decedent, of Plaintiff and the public, and in the face of an obvious need for such policies, procedures, and training programs.

92.   Defendant COUNTY through their employees and agents, and through their policy-making supervisors and remaining DOES, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants HART, NAR, CEDANA, HARDWICK, BORGES-ODELL, WARREN, RODRIGUEZ-GALAVIZ, MAGAOAY, KAUR, EVANS, BACKERT, MENDOZA, DOES 1-20, and other COUNTY personnel, with deliberate indifference to Plaintiff's, Decedent's, and others' constitutional rights, which were thereby violated as described above.

93.   The unconstitutional actions and/or omissions of Defendants HART, NAR, CEDANA, HARDWICK, BORGES-ODELL, WARREN, RODRIGUEZ-GALAVIZ, MAGAOAY, KAUR, EVANS, BACKERT, MENDOZA, DOES 1-20, and other Sheriff's Office personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and its Sheriff's Office.  Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to the authorized policymakers within the COUNTY, and the San Joaquin County Sheriff's Office, including Defendant SHERIFF-CORONER WITHROW, and that such policymakers have direct knowledge of the fact that the death of SALVADOR SILVA was the result of deliberate indifference to his serious mental health needs.  Notwithstanding this knowledge, the authorized policymakers within the COUNTY and its Sheriff's Office have

approved of the conduct and decisions of Defendants HART, NAR, CEDANA, HARDWICK, BORGES-ODELL, WARREN, RODRIGUEZ-GALAVIZ, MAGAOAY, KAUR, EVANS, BACKERT, MENDOZA, and the DOES 1-20 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of SALVADOR SILVA.  By so doing, the authorized policymakers within the COUNTY and its Sheriff's Office have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants.  Furthermore, Plaintiff is informed and believes, and thereupon alleges, that Defendant COUNTY and other policy-making officers for the COUNTY were and are aware of a pattern of misconduct and injury caused by COUNTY correctional officers and jail medical and mental health staff similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the COUNTY.

94.     The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY were a moving force behind and/or a proximate cause of the deprivations of Decedent's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above at ¶ 71.

95.     Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent, Plaintiff and others would be violated by their acts and/or omissions.

96.     As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendant COUNTY, as described above, Decedent and

Plaintiff suffered serious injuries and death, Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendant COUNTY as set forth above in ¶¶ 72-75.

**THIRD CAUSE OF ACTION**
**(Supervisory Liability - 42 U.S.C. § 1983)**
**AGAINST DEFENDANT WITHROW**
**AND DOES 1-20**

97.     Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

98.     At all material times, Defendants WITHROW and DOES 1-20, had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the other Defendants employed by the San Joaquin County Sheriff's Office.

99.     Defendants WITHROW and DOES 1-20 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective employees of their agencies, including Defendants HART, NAR, CEDANA, HARDWICK, BORGES-ODELL, WARREN, RODRIGUEZ-GALAVIZ, MAGAOAY, KAUR, EVANS, BACKERT, MENDOZA, DOES 1-20, and other COUNTY and Sheriff's Office personnel, with deliberate indifference to Plaintiff's, Decedent's, and others' constitutional rights, which were thereby violated as described above.

100.     As supervisors, Defendants WITHROW and DOES 1-20, each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights and serious medical needs of MR. SILVA.  Each of these supervising Defendants either directed his or her subordinates in conduct that violated Decedent's rights, OR set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive Decedent of rights, OR knew his or her subordinates were engaging in acts likely to deprive Decedent of rights and failed to act to prevent his or her subordinate from engaging in such conduct, OR disregarded the consequence of a known or obvious training deficiency that he or she

must have known would cause subordinates to violate Decedent's rights, and in fact did cause the violation of Decedent's rights.  (See, Ninth Circuit Model Civil Jury Instruction 9.4).  Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of Decedents' rights.

101.    The unconstitutional customs, policies, practices, and/or procedures of Defendants COUNTY stated herein, were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant COUNTY and its Sheriff's Office, including Defendants WITHROW, and DOES 1-20, with deliberate indifference to Plaintiff's, Decedent's, and others' constitutional rights, which were thereby violated as described above.

102.    The unconstitutional actions and/or omissions of Defendants HART, NAR, CEDANA, HARDWICK, BORGES-ODELL, WARREN, RODRIGUEZ-GALAVIZ, MAGAOAY, KAUR, EVANS, BACKERT, MENDOZA, DOES 1-20, and other Sheriff's Office, as described above, were approved, tolerated, and/or ratified by policymaking officers for the Sheriff's Office including Defendants WITHROW and DOES 1-20.  Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to Defendants WITHROW and DOES 1-20 and that such Defendant-policymakers have direct knowledge of the fact that the death of SALVADOR SILVA was not justified or necessary, but represented deliberate indifference to his serious medical needs, as set forth in paragraphs 71 and 93 above.   Notwithstanding this knowledge, on information and belief, Defendants WITHROW, and DOES 1-20 have approved and ratified of the conduct and decisions of HART, NAR, CEDANA, HARDWICK, BORGES-ODELL, WARREN, RODRIGUEZ-GALAVIZ, MAGAOAY, KAUR, EVANS, BACKERT, MENDOZA, and DOES 1-20 in this matter, in addition to the systemic deployment of L.V.N.'s to work beyond their legal licensure without supervision and the failure to make necessary reforms after the federal verdict and judgment in *Shaw*, and other improper customs, policies and procedures described

above, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of SALVADOR SILVA.  By so doing, Defendants WITHROW and DOES 1-20 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants.  Furthermore, Plaintiff is informed and believes, and thereupon alleges, that Defendants WITHROW and DOES 1-20 other policy-making officers COUNTY were and are aware of a pattern of misconduct and injury, and a code of silence, caused by COUNTY law enforcement officers and jail medical and mental health care staff similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the COUNTY.

103.    The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants WITHROW DOES 1-20 were a moving force behind and/or a proximate cause of the deprivations of Decedent's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above at ¶ 71.

104.    Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent, Plaintiff and others would be violated by their acts and/or omissions.

105.    As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants WITHROW and DOES 1-20 as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees as set forth above in ¶¶ 72-75.

**FOURTH CAUSE OF ACTION**
**(Violation of Civil Code § 52.1) – Survival Claim**
**AGAINST DEFENDANTS HART, NAR, CEDANA, HARDWICK, BORGES-ODELL,**
**WARREN, RODRIGUEZ-GALAVIZ, MAGAOAY, KAUR, EVANS, BACKERT,**
**MENDOZA, WITHROW, COUNTY, and**
**DOES 1-20**

106.     Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

107.     Plaintiff brings the claims in this cause of action as survival claims permissible under California law, including Cal. Code of Civ. Proc. Section 377.20 et. seq.

108.     By their acts, omissions, customs, and policies, DEFENDANTS HART, NAR, CEDANA, HARDWICK, BORGES-ODELL, WARREN, RODRIGUEZ-GALAVIZ, MAGAOAY, KAUR, EVANS, BACKERT, MENDOZA, WITHROW, and COUNTY, each Defendant acting in concert/conspiracy, as described above, while SALVADOR SILVA was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Plaintiff's and SALVADOR SILVA's rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

a.     The right to be free from objectively unreasonable treatment and deliberate indifference to SALVADOR SILVA's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

b.     Decedent's and Plaintiff SONJA ALVAREZ's right to familial association as secured by the First and/or Fourteenth Amendments.

c.     The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1;

d.     The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43; and

e.     The right to emergency medical care as required by California Government Code §845.6.

109.    Defendants' violations of Plaintiff's and Decedent's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.[1]  Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of SALVADOR SILVA's rights as described above, Defendants violated Decedent's rights by the following conduct constituting threat, intimidation, or coercion:

a.  With deliberate indifference to SALVADOR SILVA's serious medical needs, suffering, and risk of grave harm including death, depriving SALVADOR SILVA of necessary, life-saving care for his medical and/or psychiatric needs;

b.  Subjecting SALVADOR SILVA to ongoing violations of his rights to prompt care for his serious medical and psychiatric needs over days, causing immense and needless suffering, intimidation, coercion, and endangering his life and well-being;

c.  Requiring psychiatric patients in at high risk of suicide to remain in jail without adequate supervision, competent mental health treatment, or any psychiatric treatment or treatment plan whatsoever, instead of allowing them to receive necessary emergency medical and psychiatric care;

d.  Deliberately causing the provision of inadequate and incompetent medical and mental health care to San Joaquin County jail detainees and inmates;

e.  Requiring LVN's, psychiatric technicians, and associate social workers to work outside their legal scope of practice, and conduct assessments, triage, and make medical and housing decisions for patients, including SALVADOR SILVA, they are not competent to make;

f.  Choosing not to provide the required constant observation for inmates at high risk of suicide who are housed in solitary confinement in segregated cells;

g.  Housing severely mentally ill inmates, who are receiving no psychiatric care and are at high risk of suicide, in solitary confinement in segregated cells;

---

[1] See *Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013); see also, *Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at *58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving *M.H., supra.*); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following *Cornell*); *Rodriguez v. County of L.A.*, 891 F.3d 776, 799, 802 (9th Cir. 2018) (following *Cornell*).

h.   Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as SALVADOR SILVA would be subjected to violence, threat, intimidation, coercion, and ongoing violations of rights as Decedent was here.

110.   The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of Decedent's rights, or to any legitimate and lawful jail or law enforcement activity.

111.   Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

112.   Further, each Defendant violated Plaintiff's and Decedent's rights with the specific intent and purpose to deprive them of their enjoyment of those rights and of the interests protected by those rights.

113.   Defendants COUNTY and Does 1 – 20 are vicariously liable for the violation of rights by their employees and agents.

114.   Defendant County is vicariously liable pursuant to California Government Code §815.2.

115.   As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiff's and Decedent's rights under the United States and California Constitutions, Plaintiff (as successor in interest for Decedent) sustained injuries and damages, and against each and every Defendant is entitled to relief as set forth above at ¶¶ 72-75, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, treble damages and civil penalties.

**FIFTH CAUSE OF ACTION**
**(Negligence)**
**AGAINST COUNTY, WITHROW, AND DOES 1-20**

116.   Plaintiff realleges each and every paragraph in this complaint as if fully set forth

here.

117.     At all times, Defendants COUNTY, WITHROW, and DOES 1-20, owed Plaintiff and Decedent the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

118.     At all times, these Defendants owed Plaintiff and Decedent the duty to act with reasonable care.

119.     These general duties of reasonable care and due care owed to Plaintiff and Decedent by these Defendants include but are not limited to the following specific obligations:

a. To provide safe and appropriate jail custody for SALVADOR SILVA, including reasonable classification, monitoring, and housing, including placing him on suicide watch with proper suicide precautions, and preventing access to physical conditions and items that could foreseeably be used for suicide;

b. To summon necessary and appropriate medical care for MR. SILVA;

c. To use generally accepted law enforcement and jail procedures that are reasonable and appropriate for Plaintiff's status as a mentally ill and/or emotionally disturbed person;

d. To ensure that all employees are working within their legal scope of practice;

e. To ensure that inmate-patients who are at risk of suicide receive appropriate mental health care, monitoring, and supervision;

f. To ensure that all inmates in segregated housing receive appropriate supervision, including constant supervision for inmates who are at risk of suicide;

f. To ensure that all mentally ill patients receive a treatment plan, appropriate evaluation by a psychiatrist, and continuity of care;

g. To ensure that inmates at high risk of suicide are not housed alone in solitary confinement, or when housing such inmates alone, to ensure they are placed on constant observation;

h. To refrain from abusing their authority granted them by law;

i.   To refrain from violating Plaintiff's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

120.   Defendants COUNTY, WITHROW, and DOES 1-20, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiff and Decedent.

121.   Defendants COUNTY are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code section 815.2.

122.   As a direct and proximate result of these Defendants' negligence, Plaintiff and Decedent sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief as set forth above at ¶¶ 72-75, including punitive damages against such individual Defendants.

**SIXTH CAUSE OF ACTION**
**(Violation of California Government Code § 845.6)**
**AGAINST DEFENDANTS COUNTY, HART, NAR, CEDANA, HARDWICK, BORGES-ODELL, WARREN, RODRIGUEZ-GALAVIZ, MAGAOAY, KAUR, EVANS, BACKERT, MENDOZA, and DOES 1-20**

123.   Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

124.   Defendants COUNTY, HART, NAR, CEDANA, HARDWICK, BORGES-ODELL, WARREN, RODRIGUEZ-GALAVIZ, MAGAOAY, KAUR, EVANS, BACKERT, MENDOZA, and DOES 1-20 knew or had reason to know that SALVADOR SILVA was in need of immediate and a higher level of medical and psychiatric care, treatment, and observation and monitoring, that he required special housing and security – including being placed on suicide watch and on suicide precautions – for his own safety and well-being, and each Defendant failed to take reasonable action to summon and/or to provide him access to such medical care and treatment and/or provide him

housing accommodations necessary for him under such circumstances.  When Defendants chose not to provide MR. SILVA with any psychiatric care whatsoever, and to have LVN's, psychiatric technicians, and associate social workers work outside their legal scope of practice and provide incompetent assessments of inmates, Defendants had the duty to obtain emergency medical and psychiatric care for MR. SILVA, especially when he informed Defendants he was suicidal.  Each such individual Defendant, employed by and acting within the course and scope of his or her employment with Defendant COUNTY, knowing and/or having reasons to know this, failed to take reasonable action to summon and/or provide MR. SILVA access to such care, treatment, and medically appropriate housing in violation of California Government Code § 845.6.  Defendant COUNTY is vicariously liable for the violations of state law and conduct of its officers, deputies, employees, and agents, including individual named defendants, under California Government Code sections 815.2 and 845.6.

125.    As a direct and proximate result of the aforementioned acts of these Defendants, Plaintiff and Decedent were injured as set forth above, and their losses entitle Plaintiff to all damages allowable under California law.  Plaintiff (individually and as Successor in Interest for Decedent) sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorney fees under California law as set forth in ¶¶ 72-75, above, including punitive damages against these individual Defendants.

**SEVENTH CAUSE OF ACTION**
**(VIOLATION OF ADA (Title II and III) and REHABILITATION ACT)**
**(42 U.S.C. § 12132 & 29 U.S.C. § 794)**
**PLAINTIFF AGAINST DEFENDANT COUNTY OF SAN JOAQUIN**

126.    Plaintiff re-alleges and incorporates by reference the allegations contained in this complaint, as though fully set forth herein.

127.    At all material times, including, but not limited to prior to – and between – June 27 2019 and August 1, 2019, MR. SILVA was a "qualified individual" with a mental illness and

disability and medical impairments that limited and/or substantially limited his ability to care for himself and control his mental, medical, or physical health condition as defined under the ADA, 42 U.S.C. § 12131 (2), and under Section 504 of the Rehabilitation Act ("RA") of 1973, 29 U.S.C. § 794, 28 C.F.R. 42.540 (k); as such, MR. SILVA qualified as an individual with a mental and physical disability under California law and MR. SILVA met the essential eligibility requirements of COUNTY programs to provide access to medical and mental health care services for its detainee/inmate patients in COUNTY's jails while they are in custody.

128.    Defendant COUNTY's jail and mental health services are places of public accommodation and are covered entities for purposes of enforcement of the ADA, 42 U.S.C. §12181 (7)(F), and the Rehabilitation Act, 29 U.S.C. § 794, as explicated by the regulations promulgated under each of these laws.  Further, on information and belief, Defendant COUNTY and its jail receives federal assistance and funds.

129.    Defendant COUNTY's jail, as a local government and/or department or agency thereof, falls within the definition of "program or activity" covered by the Rehabilitation Act, 29 U.S.C. Section 794(b).  Defendant COUNTY is also within the mandate of the RA that no person with a disability may be "excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity." 29 U.S.C. § 794.

130.    Under the ADA, Defendant COUNTY is mandated to "develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities and developmental disabilities . . ." and to ensure "that the personal and civil rights" of persons who are receiving services under its aegis are protected.

131.    Congress enacted the ADA upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101 (a)(2).

132.    Defendant COUNTY is mandated under the ADA not to discriminate against any qualified individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public

accommodation." 42 U.S.C. § 12182 (a).

133.    The ADA, 42 U.S.C. § 12182(b)(1)(A)(iii), provides in pertinent part that: "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual licensing, or other arrangements, with a good, service, facility, privilege, advantage, or accommodation *that is different or separate* from that provided to other individuals." *Id*. (emphasis added).

134.    Defendant COUNTY violated the ADA, RA, and discriminated against MR. SILVA and Plaintiff, violating their ADA, RA, and state protected rights by: (a) failing to provide services or to accommodate MR. SILVA with access to appropriate, competent, and necessary care for his serious medical and psychiatric for persons who qualify for access and services under Welfare and Institutions Code 5150; (b) failing to provide services or accommodate MR. SILVA as indicated and with appropriate classification, housing, and monitoring for a person in their sole and exclusive custody who they knew was mentally disabled and at risk for suicide; (c) failing to provide reasonable accommodations to people in custody with mental disabilities at its jail and, instead, providing a quality of care and service that is different, separate, inferior, and worse than the service provided to other individuals with the same disabilities; (d) denying MR. SILVA, a qualified individual with a disability, the opportunity to participate in or benefit from the aid, benefit, or services of the COUNTY, in violation of 28 C.F.R. § 35.130(b)(1)(i); (e) by reason of Plaintiff's mental disabilities, Defendants did not afford Plaintiff an opportunity to participate in or benefit from the aid, benefits, and services that are equal to those afforded to other, non-disabled individuals by Defendants, in violation of 28 C.F.R. § 35.130(b)(1)(ii); (f) on the basis of Plaintiff's disability, the named Defendants failed to provide Plaintiff an aid, benefit, or service that was as effective in affording equal opportunity to obtain the same result, to gain the same benefit, and to reach the same level of achievement as provided to other individuals in the same situation, in violation of 28 C.F.R. §35.130(b)(1)(iii); (g) limited MR. SILVA, a qualified individual with a disability, in the enjoyment of rights, privileges, advantages, or opportunities enjoyed by others receiving the aid, benefit, or service of which MR. SILVA was denied, in violation of 28 C.F.R.

§35.130(b)(1)(vii).

135.    MR. SILVA was denied the benefits of the services, programs, and activities of the COUNTY, and was denied accommodation for his disabilities, which deprived him of safety, necessary care, and mental health and medical health programs and services, which would have provided planning and delivery of treatment, follow-up, and supervision.  This denial of accommodation, programs, and services was the result of his disability in that he was discriminated against because he was mentally ill, at risk for suicide, and gravely disabled, in that he suffered from conditions in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs for food, clothing, or shelter and is unable to advocate for himself; and, SILVA had mental impairments that substantially limited one or more of his major life activities.

136.    As a result of the acts and misconduct of Defendant COUNTY complained of herein, Plaintiff SILVA died, and Plaintiff has suffered, is now suffering, and will continue to suffer damages and injuries as alleged above.  Plaintiff SONJA ALVAREZ has suffered loss of love and society and claims damages for the wrongful death of her adult son in an amount not yet ascertained, but to be proven.  Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees as set forth in the ADA and RA and above, in ¶¶ 72-75.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests the following relief against each and every Defendant herein, jointly and severally:

    a.    Compensatory and exemplary damages in an amount according to proof and which is fair, just, and reasonable;

    b.    Punitive damages under 42 U.S.C. § 1983 and California law in an amount according to proof and which is fair, just, and reasonable;

    c.    All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil Code §§ 52 et seq., 52.1; 42 U.S.C. § 12132 and 29 U.S.C. § 794, and as otherwise may be allowed by California and/or federal law;

d.   Declaratory and injunctive relief, including but not limited to the following:

    i.   An order requiring Defendant County to institute and enforce appropriate and lawful training, supervision, policies, and procedures for handling mentally ill and/or emotionally disturbed persons, and/or persons with serious medical and mental health needs at the COUNTY's jail;

    ii.   An order compelling Defendants to provide inmates at the COUNTY'S jail access to appropriate, competent, and necessary care for serious medical and psychiatric needs;

    iii.   An order requiring Defendant COUNTY to cease allowing and assigning LVN's, Psychiatric Technicians, and Associate Social Workers to work outside their legal scope of practice and without sufficient supervision;

    iv.   An order requiring Defendant HART to evaluate a patient before prescribing medication for the patient except in cases of emergency;

    v.   An order compelling Defendants to properly classify, house, and/or monitor inmates suffering from mental health disabilities, including placement on suicide watch with proper suicide precautions;

    vi.   An order requiring Defendant County to provide constant observation for all suicidal inmates housed alone in segregated cells;

    vii.   An order prohibiting Defendants from continuing to allow, encourage, and require unlicensed and/or inadequately trained and/or and inadequately supervised medical and mental health staff to make decisions to place jail inmates on, and remove inmates from, suicide watch or the safety cell;

e.   Such further relief, according to proof, that this Court deems appropriate and lawful.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial in this action.

Dated:  July 20, 2020                         HADDAD & SHERWIN LLP


                                              /s/ *Julia Sherwin*
                                              _____
                                              JULIA SHERWIN
                                              Attorneys for Plaintiff